WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Robert Dale Higgins,

               Petitioner,

v.

Charles L. Ryan, et al.,

               Respondents.

No. CV-13-0189-TUC-DTF

**ORDER**

    Petitioner Robert Higgins, presently incarcerated at the Arizona State Prison-Eyman, Meadows Unit, in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Petition (Doc. 1), Respondents' Answer (Docs. 22-25), and Petitioner's Reply (Doc. 29). The parties have consented to Magistrate Judge jurisdiction. (Doc. 20.) Based on the pleadings and exhibits submitted to the Court, the Petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

    Higgins was convicted in the Superior Court of Cochise County of child molestation, indecent exposure, tampering with evidence, and 16 counts of sexual exploitation of a minor. (Doc. 22, Ex. B.) On October 22, 2009, he was sentenced to prison terms totaling 227 years. (*Id*.)

The convictions were based on the following facts, as summarized by the appellate court:

> While using Higgins's desktop computer in October 2007, his girlfriend B. found and viewed a portion of a recently recorded video depicting Higgins and his then-four-year-old daughter, T. In the video, Higgins was naked, while T. was wearing only a t-shirt. Higgins, while masturbating, approached T. and appeared to speak to her, at which time she "went on all fours" and turned her "buttocks . . . towards him." Higgins then reached his hand toward her genitals and, according to B., "it looked like he had actually touched her genital area," although B. also stated she "didn't actually see" Higgins "touch [T.'s] area" because T.'s "leg was in the way" and B. therefore could not see his hand. B. stopped the video before it ended and called Higgins, threatening to contact law enforcement. Higgins then returned to his house, and when B. asked him "if he had done it," he responded that he wanted to "explain." B. then left, telling Higgins that she was going to report him.
>
> After B. spoke with police officers, she agreed to make a recorded telephone call to Higgins. During that call, Higgins tacitly admitted he had touched T. inappropriately but explained he had only done it once and it had been a mistake. Pursuant to a search warrant, police officers searched Higgins's home and, although they did not find his desktop computer, they found a laptop computer. A computer forensics expert discovered on the laptop computer's hard drive ten photographs and four videos depicting child pornography, all involving unknown victims. Police officers later found Higgins at a hotel and arrested him. Officers found Higgins's desktop computer in his hotel room, but the hard drive had been removed and thrown away and Higgins had installed a replacement.

(Doc. 22, Ex. E at 2-3.)

Higgins filed an appeal, and the Arizona Court of Appeals affirmed his convictions and sentences. (Doc. 22, Exs. D, E.) Higgins did not seek review in the Arizona Supreme Court. (*Id.*, Ex. G.) Higgins filed a Notice of Post-conviction Relief (PCR). (*Id.*, Ex. H.) Higgins's appointed attorney filed an *Anders* brief, stating that he did not find any claims for relief to raise in a PCR petition and seeking leave for Higgins to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

file a pro se petition if he so chose. (*Id.*, Ex. J.) Petitioner filed a PCR petition, which was denied. (*Id.*, Exs. K, L.) Higgins sought and was granted review of the PCR denial in the Arizona Court of Appeals, but relief was denied. (*Id.*, Exs. M, N.) Higgins did not seek review in the Arizona Supreme Court. (*Id.*, Ex. O.)

## DISCUSSION

Petitioner raises nine claims in his Petition. Respondent does not contest the timeliness of the Petition but contends Claims 1 and 6 are procedurally defaulted and Claim 9 is not cognizable. The Court will first exam exhaustion of Claims 1 and 6 and then address the merits of the remaining claims, including the cognizability of Claim 9.

### PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found

by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray*, 518 U.S. at 161-62.

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**ANALYSIS OF PROCEDURAL DEFAULT**

In Claims 1 and 6, Higgins alleges trial and appellate counsel were ineffective for failing to contest the exercise of jurisdiction over the counts in the indictment based on the images found on his laptop computer. Specifically, Higgins argues that receipt of the images occurred in South Korea in 2005 and the images were never accessed or even

accessible in Arizona because the laptop was broken. Respondents concede Higgins fairly presented these claims in state court (Doc. 22, Ex. K at 5-7, 16-17), but contend they were found precluded on state law grounds.

In the PCR petition, regarding trial counsel, Higgins argued that there was no jurisdiction because the images at issue were downloaded outside of Arizona and never accessed within the state. (Doc. 22, Ex. K at 6.) He went on to assert that trial counsel failed to argue that he did not possess the images within the jurisdictional boundaries of Arizona because the computer was broken and the images were only accessible with specialized software. (*Id.* at 7.) Higgins argued that the central question was one of possession, without which there was no jurisdiction, (*Id.* at 8.) In a later section, Higgins argued that appellate counsel failed to contest jurisdiction and conceded that Higgins possessed the images, despite the last access to the images occurring outside the jurisdictional boundary of Arizona. (*Id.* at 16.)

The PCR court held that trial counsel did not fall below professional norms because "[i]t was clear that Arizona did have jurisdiction to prosecute defendant for possession of the images . . . and thus any supposed failure of trial counsel in contesting these issues would not have prejudiced defendant's case." (Doc. 22, Ex. L at 2.) Thus, Claim 1 was squarely addressed on the merits and is properly exhausted.

The ruling regarding IAC on appeal, Claim 6, is less clear. Some of the confusion is due to the terminology used to discuss the claim. As acknowledged by Higgins in the PCR petition, his ineffective assistance of counsel (IAC) claims related to jurisdiction

hinge on the question of "possession"; thus, those two words are used interchangeably by him and the state courts to articulate the claim. Therefore, this Court looks at the PCR court's discussion of both jurisdiction and possession.

The PCR court made the following finding: "Defendant's argument that trial counsel did not argue about whether the images were in his possession is simply factually wrong; trial counsel did in fact argue the sufficiency of the evidence. So did appellant counsel during the direct appeal." (Doc. 22, Ex. L at 2.) A few pages later, the PCR court discussed the question of jurisdiction more extensively: "As the State correctly argues: 'Admittedly, the Court of Appeals did not use the term "jurisdiction" while disposing of this issue, yet the legal and factual analyses remains the same. Thus, the issue is indistinguishable from the claim . . . that his possession was not intentional.'" (*Id.* at 4.) The PCR court went on to hold:

> Arizona had (and continues to have) jurisdiction to prosecute defendant for the images found on the laptop computer, regardless of where they were downloaded. The Court of Appeals must have determined that Arizona had such jurisdiction; otherwise, the convictions and sentences could not have been affirmed. The issue of jurisdiction is thus precluded under Rule 32.2(a), as having been raisable on direct appeal and in fact decided on direct appeal.

(*Id.*) The appellate court found no error in the PCR court's decision. (*Id.*, Ex. N.)

Arguably, the PCR court ruled on the merits of the claim when it stated that appellate counsel raised the issue of possession on appeal. (Doc. 22, Ex. L at 2.) In making that finding, the PCR court implicitly concluded the IAC on appeal claim was without merit. Two pages later, the PCR court again indicated that appellate counsel

sufficiently raised jurisdiction, which undermines a claim of ineffectiveness.  The PCR court remarked that when appellate counsel raised (and the court of appeals decided) the claim that Higgins did not intentionally possess the images that addressed the jurisdictional argument. (*Id.* at 4.) Thus, this Court could conclude the PCR court addressed this claim on the merits.

Alternatively, the PCR court indicated that this issue was precluded because it was raised and decided on appeal. There are two difficulties with this Court adopting such a finding. First, the PCR court stated that the issue of jurisdiction was decided on appeal, not that the IAC claims related to jurisdiction were resolved on appeal. This is logical because it is not possible for appellate counsel to raise a claim of her own ineffectiveness on appeal. Second, to the extent the PCR court's ruling was addressing the IAC claim, it is evident that the ruling refers to Rule 32.2(a)(2), which addresses claims raised on appeal. A preclusion ruling based on Arizona Rule 32.2(a)(2) does not operate as a bar to federal review of a claim. *See Poland (Patrick) v. Stewart*, 169 F.3d 573, 578 (9th Cir. 1999) (noting that a precluded claim appears to be a "classic exhausted claim"); *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir.1996) (recognizing the distinction between waiver and preclusion, and holding that "[p]reclusion does not provide a basis for federal courts to apply a procedural bar"). Normally, when a state court makes a preclusion finding under Rule 32.2(a)(2), a federal court reviews the claim by examining the earlier state adjudication. In this instance, however, the IAC on appeal claim was not raised or

- 7 -

decided on direct appeal. Consequently, this Court would have to find that the PCR court erroneously determined that the issue had been resolved on appeal.

Under either interpretation the claim is not procedurally barred from review in this Court. Because Petitioner fairly presented Claim 6 in the PCR proceedings, and the state courts did not find it defaulted pursuant to an adequate bar, it is properly before this Court for review.

**LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner

must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### ANALYSIS OF MERITS

The Court now analyzes the merits of Higgins's nine claims, eight of which allege ineffective assistance of counsel by trial or appellate counsel.

### Ineffective Assistance of Counsel Standard

Ineffective assistance of counsel (IAC) claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

**Claims 1 and 3**

In Claim 1, Higgins alleges trial counsel was ineffective for failing to contest the exercise of jurisdiction over the counts in the indictment based on images found on his laptop computer. In Claim 3, Higgins argues trial counsel was ineffective for failing to argue that Higgins did not "possess" the images found on his laptop. These claims are essentially synonymous as Higgins's argument as to both is that receipt of the images occurred in South Korea and the images were never accessed or even accessible in Arizona because the laptop was infested with viruses, the keyboard was broken, and it required forensic software to access the images.

1
2
3
4
5
6
7
8
9
10
11
12

After the State rested during trial, defense counsel made an oral motion for acquittal based on Arizona Rule of Criminal Procedure 20. (Doc. 22, Ex. V at 58.) He argued there was no Arizona jurisdiction for receipt of the images and he disputed "possession." (*Id.* at 59.) He stated that there was no evidence that Higgins knew the images were on his computer and it required special software to locate them. (*Id.* at 59-60.) Finally, he argued that if Higgins ever possessed the photos the possession occurred in Korea, where the photos were deleted in an effort to get rid of the images. (*Id.* at 61.) After acknowledging counsel's arguments, the trial court denied the Rule 20 motion. (*Id.* at 80-81, 84-85.)

13
14
15
16
17
18
19
20
21
22
23
24
25
26

On appeal, counsel contested the sufficiency of the evidence to support the charges based on the images on his laptop. (Doc. 22, Ex. D at 17-18.) The court of appeals first stated that Higgins admitted to owning the laptop and the evidence established that it had been used to access child pornography websites. (*Id.*, Ex. E at 6-7.) The court further stated that the jury could have inferred that Higgins had accessed those websites, thereby rejecting his testimony that he had not done so and was not aware the images were on his computer. (*Id.* at 7.) Additionally, the jury could have inferred that Higgins knew that images from websites he had visited were stored in hidden files on his hard drive. (*Id.*) Based on the evidence and the current law, the court found that the jury could have inferred that Higgins knowingly possessed the images on his laptop in 2007. (*Id.* at 8.)

27
28

- 12 -

In ruling on the IAC claims, the PCR court found that Arizona had jurisdiction over the claims and Higgins was not prejudiced by trial counsel not contesting jurisdiction. (Doc. 22, Ex. L at 2.) The court further ruled that "Defendant's argument that trial counsel did not argue about whether the images were in his possession is simply factually wrong; trial counsel did in fact argue the sufficiency of the evidence." (*Id.*)

It is evident that trial counsel raised the issue of jurisdiction and possession when arguing for dismissal of these charges at trial. Because counsel raised this issue, he was not deficient for failing to do so. Further, the court of appeals found there was sufficient evidence to find that Higgins knowingly possessed the images in 2007, within the jurisdiction of Arizona. Therefore, further argument on this point would not have been meritorious and Higgins suffered no prejudice from counsel's actions regarding this issue. The state court's denial of Claims 1 and 3 was not objectively unreasonable.

**Claim 2**

Higgins argues trial counsel was ineffective for failing to investigate witnesses that were stationed in South Korea with Higgins who could have testified that others had access to his laptop computer on which the illegal images were found.

With his PCR petition, Higgins submitted an affidavit in which he attested that he provided trial counsel names of witnesses that could have testified that other people had unlimited access to his laptop computer while he was stationed in South Korea. (Doc. 22, Ex. K, Ex. 1.) The PCR court ruled that Higgins failed to indicate what testimony from these witnesses could have aided his defense. (Doc. 22, Ex. L at 2.)

Even if other people had access to Higgins's laptop, that would not have precluded the jury from concluding that he was the person that downloaded the images found on his computer. Regardless, Higgins was charged and the jury found him guilty of possession of the images. Whether others had access to the laptop or even downloaded the material is of limited relevance to the charge of possession in 2007.

Thus, Higgins was not prejudiced by counsel's failure to investigate and present evidence that others had access to Higgins's laptop. The state court's denial of this claim was not objectively unreasonable.

**Claim 4**

Higgins alleges trial counsel was ineffective for failing to request a recess or continuance to discuss the prosecution's plea offer. Higgins contends that after two years in jail he was mentally prepared for trial. However, he states that he would have accepted the plea if counsel had advised him of the likelihood of success at trial.

In the week before trial, the prosecution offered Higgins a plea deal with a ten-year sentence (to serve a minimum of 85% of the time) and lifetime probation. (Doc. 22, Ex. Y at 137-38, 140.) At a pretrial motions hearing, counsel discussed the plea with the court and the prosecutor stated that the deal was open only until the end of the day. (*Id.* at 138.)

The trial court then held a *Donald* hearing. (*Id.* at 137, 140-45.) After going over the possible sentence if Higgins were to lose on all counts (258 years, plus fines) and the

terms of the plea deal, Higgins stated that he understood the possible sentence and the plea offer. (*Id.* at 141-44.) The Court then had the following colloquy with Higgins:

> THE COURT: Do you have any questions you'd like to ask me or your attorney or the prosecutor about the offer or about your potential exposure if you go to trial and lose?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: Do you believe that you've had a sufficient opportunity to think about the matter and to talk to your attorney about what's best for you?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And at this time what is your decision? Do you want to accept the offer, or do you prefer to go to trial?
>
> THE DEFENDANT: I am declining the offer, your Honor.
>
> THE COURT: Okay. We will therefore proceed with trial.

(*Id.* at 144-45.)

Higgins attached an affidavit to his PCR petition in which he averred that counsel failed to advise him on whether he should take the plea and that he would have accepted the deal if given time to reflect. (Doc. 22, Ex. K, Ex. 1.) The PCR court recounted the colloquy from the *Donald* hearing set forth above and held:

> The Court recalls that Mr. Higgins was very clear that he wanted to proceed to trial. He did not waiver or hesitate in rejecting the offered plea.
>
> There was no failing on the part of trial counsel in communicating the 10-year offer to defendant. There is also no reason to believe that defendant would ever have accepted that plea, no matter if more time had been given. Although the court probably would have granted a request for a recess to allow consideration of a plea, the court would not have continued

the trial under those circumstances. But the defendant's decision to go to trial would not have been affected by any continuance.

(Doc. 22, Ex. L at 2-3.)

This claim cannot succeed because Higgins has failed to establish that counsel's performance was deficient. First, seeking a continuance of trial would have been futile because the plea deal was only available that day and the court stated it would not have granted a continuance. Second, the PCR court's factual findings foreclose Higgins's claim premised on counsel's failure to seek a recess. Despite Higgins's attestation to the contrary, the PCR court found that counsel did not fail to adequately advise Higgins of the plea and that Higgins would not have taken the plea given more time. These fact findings are presumed correct and Higgins has presented no evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1). In light of the facts found by the PCR court, Higgins cannot demonstrate that counsel's performance was deficient. The state court's denial of this claim was not objectively unreasonable.

**Claim 5**

Higgins argues that trial and appellate counsel were ineffective for failing to dispute the jury instruction on indirect contact. Higgins argues there was no evidence that he indirectly touched his daughter, therefore, the instruction should not have been given.

In discussing jury instructions, the trial court proposed the following instruction, to which defense counsel did not object:

The crime of molestation of a child requires proof of the following:

1

2              1. The defendant intentionally or knowingly engaged in any direct or

3     indirect manipulation of Taylor Higgins' vulva with his finger, and
                    2. The child was under 15 years of age.

4     (Doc. 22, Ex. W at 108.) The instruction was given as agreed. (*Id.* at 150.) During

5     deliberations, the jury sent out a note, which said "please define 'indirect manipulation.'"

6     (Doc. 22, Ex. X at 2.) Defense counsel proposed a response, which was rejected by the

7     (Doc. 22, Ex. X at 2.) Defense counsel proposed a response, which was rejected by the

8     trial court in favor of the prosecution's proposal: "[i]ndirect manipulation means

9     manipulation other than by direct touching." (*Id.* at 6-10.) Defense counsel went on to

10    argue unsuccessfully that the term "indirect manipulation" was unconstitutionally vague

11

12    and, therefore, Count 2 should be dismissed. (*Id.* at 10.)

13         On direct appeal, counsel challenged the sufficiency of the evidence to support the

14    molestation conviction. The appellate court held that, in addition to the portion of the

15

16    video seen by Higgins's girlfriend, Higgins tacitly admitted to touching his daughter

17    during a phone call with his girlfriend by stating various things including that he had not

18    touched anyone else's children.

19

20         Appellate counsel also argued that the supplemental jury instruction on indirect

21    manipulation was not supported by the evidence and allowed the jury to convict based on

22    speculation. (Doc. 22, Ex. D at 19-20.) Additionally, she argued the supplemental

23    instruction was unconstitutionally vague. (*Id.* at 20.) The appellate court agreed that there

24    instruction was unconstitutionally vague. (*Id.* at 20.) The appellate court agreed that there

25    was no evidence of an indirect touching. (Doc. 22, Ex. E at 9.) The court noted that the

26    jury was instructed that some instructions might be inapplicable. (*Id.*) The court of

27

28

appeals concluded the response to the jury's question was not an incorrect statement of the law and did not amount to reversible error. (*Id.*)

In ruling on Claim 5, the PCR court relied on the findings by the appellate court on the related claim regarding the supplemental jury instruction: the issue of "indirect touching" was immaterial because there was no evidence the defendant had touched the victim with an object or through her clothing; the jury was instructed that some instructions would not apply; and the supplemental instruction was correct. (Doc. 22, Ex. L at 3.) Therefore, the PCR court concluded that Higgins was not prejudiced by counsel's failure to challenge the instruction at trial or on appeal. (*Id.*)

The instruction as given was not erroneous as it tracked the statutory language and the language of the indictment. The indictment charged Higgins in Count 2 with molesting his daughter "by intentionally or knowingly engaging in or causing a person to engage in sexual contact, to wit manipulated . . . vulva with his finger." (Doc. 22, Ex. A at 1.) Molestation of a child occurs by a person "intentionally or knowingly engaging in or causing a person to engage in sexual contact . . . with a child who is under fifteen years of age." A.R.S. § 13-1410(A). "Sexual contact" is defined as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." A.R.S. § 13-1401(2). The trial court's instruction tracked the statute with some elements removed because they were not alleged in the indictment or relevant to the evidence

presented, such as touching and fondling, or causing someone else to engage in contact. (*See* Doc. 22, Ex. W at 102-03, 107.)

Higgins has failed to explain how this accurate jury instruction prejudiced him. There is no evidence of harm by the inclusion of indirect manipulation simply because there may not have been evidence to convict him on that ground. Critically, the court of appeals found there was sufficient evidence to support his conviction under the statute based on a direct manipulation. The state court's denial of this claim was not objectively unreasonable.

**Claim 6**

Higgins argues appellate counsel was ineffective for failing to argue the lack of jurisdiction in light of the fact that Higgins had no "possession" of the images while in Arizona.

Although appellate counsel did not frame a claim in terms of jurisdiction, she did argue about the issue of possession during the time-frame alleged in the indictment. She argued there was insufficient evidence to establish that Higgins knowingly possessed child pornography because there was no evidence he had the knowledge to access deleted hidden images in 2007, particularly in light of the evidence that the laptop was broken and had no power cord. (Doc. 22, Ex. D at 17-18.) The court of appeals denied the claim finding there was sufficient evidence from which the jury could infer that Higgins knew the images were on his laptop during the 2007 time-frame alleged in the indictment. (Doc. 22, Ex. E at 8.)

1

2

3       Because the appellate court found there was sufficient evidence to sustain

4   Higgins's convictions for possession of child pornography in 2007, a jurisdictional claim

5   premised on the same argument would have failed. Therefore, appellate counsel was not

6   deficient for failing to argue a meritless claim and Higgins was not prejudiced by her

7   failure to raise it.

8       **Claim 7**

9

10      Higgins argues appellate counsel was ineffective for failing to argue that his

11  sentences violated the Eighth Amendment. Higgins contends his sentences totaling 175

12  years should have been challenged on severity in light of the fact that the images were

13  "not catalogued nor located within any particular space or file on the hard drive, not

14  accessed, modified, or viewed since 2005, and not downloaded by petitioner." (Doc. 1-2

15  at 42.) Further, Higgins's expert testified that many of the images were likely the result of

16

17  a virus.

18      The PCR court ruled that an Eighth Amendment argument was futile in light of

19  *State v. Berger*, 212 Ariz. 473, 134 P.3d 378 (2006). (Doc. 22, Ex. L at 4.) Therefore,

20

21  counsel's performance was not deficient and, because the appellate court would have

22  denied such an argument, Higgins was not prejudiced. (*Id.*)

23      In *Berger*, the defendant was convicted on twenty counts of sexual exploitation of

24  a minor related to child pornography and sentenced to ten years per count, each to be

25  served consecutively. 134 P.3d at 380, 212 Ariz. at 475. The Arizona Supreme Court

26

27  stated that generally an Eighth Amendment analysis looks at the sentence for each crime

28

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not the fact that they were imposed consecutively or that the aggregate sentence is lengthy. *Id.* at 384, 212 Ariz. at 479. The court ultimately held that a ten-year sentence is not grossly disproportionate to knowingly possessing child pornography. *Id.* at 384, 212 Ariz. at 479.

Here, Higgins was convicted under the same statute as Berger, A.R.S. § 13-3553, and the judge sentenced him to a partly mitigated sentence of 12.5 years on each of 14 counts. (Doc. 22, Ex. B at 3, 9-22.)  The Arizona Court of Appeals has held that it is bound to follow *Berger* and could not grant relief on an Eighth Amendment claim involving seven consecutive 10-year sentences for possession of child pornography. *See State v. McPherson*, 269 P.3d 1181, 1186, 228 Ariz. 557, 562 (Ct. App. 2012). Because the appellate court would have denied an Eighth Amendment claim by Higgins in light of *Berger*, his counsel was not deficient for failing to raise the claim and Higgins was not prejudiced by the failure. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance"). The state court's denial of this claim was not objectively unreasonable.

**Claim 8**

Higgins argues trial and appellate counsel were ineffective for failing to challenge Counts 2, 3, and 4 as multiplicitous in violation of the Double Jeopardy Clause. Higgins contends he received multiple sentences for a single offense, which was a continuous act involving one victim. Count 2 was child molestation, and Counts 3 and 4 were sexual exploitation of a minor.

The PCR court did not provide a substantive ruling on this claim, however, the court of appeals addressed it. The appellate court held that because there was no double jeopardy offense counsel was not deficient for failing to raise the claim and Higgins was not prejudiced.

The double jeopardy clause protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Often a course of criminal conduct will entail the violation of several statutes. In those cases, if the statutes are not redundant, the prosecutor may charge the defendant with violating one or all of the statutes, and the defendant can be convicted of violating more than one statute." *United States v. Duncan*, 693 F.2d 971, 975 (9th Cir. 1982). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If each statute requires proof of an additional fact the charges are not multiplicitous. *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871).

To gauge potential redundancy, the Court must look at the elements of each statute. This Court relies upon the analysis conducted by the court of appeals, which set forth the distinct elements of each statute:

> In this case, Higgins's two convictions for sexual exploitation of his daughter were based on one violation of A.R.S. § 13-3553(A)(1), which prohibits "[r]ecording, filming, photographing, developing or duplicating any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct," and one violation of § 13-3553(A)(2), which prohibits "[d]istributing, transporting, exhibiting, receiving, selling,

- 22 -

purchasing, electronically transmitting, possessing or exchanging" such visual depictions. . . . As we explained in *State v. Paredes-Solano*, 223 Ariz. 284, ¶¶ 15-16, 222 P.3d 900, 906 (App. 2009),

> The actions listed in [Section 13-3553,] subsection (A)(1) cause harm to the child in the creation of the visual images, while the acts in subsection (A)(2) harm the child through the perpetuation of those images. Each subsection is violated by distinctly different conduct causing different kinds of harm to the child. The two subsections thus represent more than merely different ways of committing a single offense and, we conclude, create offenses that are separate and distinct.

> Similarly, Higgins's molestation conviction required proof of entirely different conduct, specifically that he "intentionally or knowingly engag[ed] in . . . sexual contact . . . with a child under fifteen years of age." 1993 Ariz. Sess. Laws, ch. 255, § 29.

(Doc. 22, Ex. N at 5.)

As explained above, each of the three counts required distinct conduct that the other counts did not. Count 2 required sexual contact, which Counts 3 and 4 did not. Count 3 required the creation or duplication of a visual depiction, which Counts 2 and 4 did not. And, Count 4 required possession of a visual depiction, which Counts 2 and 3 did not. Thus, there was no violation of double jeopardy and counsel was not ineffective for failing to raise this claim. The state court's denial of this claim was not objectively unreasonable.

**Claim 9**

Higgins argues the PCR improperly denied him an evidentiary hearing on his PCR petition. Petitioner can only raise claims in his federal habeas petition based on a violation of the United States Constitution or federal law. 28 U.S.C. § 2254(a). Claim 9

does not assert a federal law violation, therefore, it is not cognizable before this Court. Further, alleged errors in the PCR process are not cognizable in a federal habeas corpus proceeding because they do not attack the lawfulness of Petitioner's detention. *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) (finding allegations of error in state post-conviction review process non-cognizable); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997). Claim 9 is not cognizable.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). The Court finds that reasonable jurists could not debate that the merits of any claim should have been resolved differently. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

1

2          **IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing

3    Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a

4    certificate of appealability.

5          Dated this 15th day of September, 2014.

6

7

8

9

10

11                                            D. Thomas Ferraro
                                        United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28